**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Martin Hamburger, on his own behalf and on behalf of all similarly situated individuals,<br><br>     *Plaintiff,*<br> v.<br><br>CVS Caremark and Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield,<br><br>     *Defendants.* | Civil Action No. 1:25-cv-03000-TNM |

## MOTION TO DISMISS OF DEFENDANT GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC. D/B/A CAREFIRST BLUECROSS BLUESHIELD

For the reasons set forth in the attached memorandum of points and authorities,

Defendant Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross

BlueShield respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6),

to dismiss the Class Action Complaint [ECF No. 1] with prejudice.

Dated: November 26, 2025     Respectfully submitted,

           By:  /s/ Tracy A. Roman
             Tracy A. Roman (D.C. Bar No. 443718)
             Crowell & Moring LLP
             1001 Pennsylvania Avenue, N.W.
             Washington, DC  20004-2595
             Telephone: (202) 624-2500
             Facsimile: (202) 628-5116
             Email: troman@crowell.com

Thomas Hardy (*pro hac vice pending*)
Crowell & Moring LLP
455 N. Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611
Tel: (312) 321-4200
thardy@crowell.com

Carol B. Lewis (*pro hac vice pending*)
Crowell & Moring LLP
515 South Flower Street
41st Floor
Los Angeles, CA 90071
Tel: (213) 622-4750
clewis@crowell.com

*Attorneys for Defendant Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Martin Hamburger, on his own behalf and on behalf of all similarly situated individuals,<br><br><div align="right">*Plaintiff,*</div><br>    v.<br><br>CVS Caremark and Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield,<br><br><div align="right">*Defendants.*</div> | Civil Action No. 1:25-cv-03000-TNM |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT GROUP HOSPITALIZATION AND <u>MEDICAL SERVICES, INC. D/B/A CAREFIRST BLUECROSS BLUESHIELD</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................... ii

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................................... 2

    A.    The Plan Excludes Prescription Weight Loss Medications Like Zepbound........... 2

    B.    Caremark Denies Coverage For Zepbound Because It Is Not Covered Under Plaintiff's Plan. ................................................................................................. 3

    C.    Plaintiff's Claims. ................................................................................................. 4

III.    LEGAL STANDARD ............................................................................................... 5

IV.    ARGUMENT ........................................................................................................... 6

    A.    The Section 502(a)(1)(B) Claim Fails Because Plaintiff Does Not Allege Facts Showing That CareFirst Breached The Plan. ......................................................... 6

    B.    The Section 502(a)(3) Claim Fails For Multiple Reasons. ...................................... 9

        1.    Plaintiff Has An Adequate Remedy At Law Under 29 U.S.C. § 1132(a)(1)(B). ............................................................................................. 9

        2.    Plaintiff Fails To Allege That CareFirst Breached A Fiduciary Duty. ...... 11

        3.    CareFirst Applied The Plan Terms Set By Plaintiff's Employer, Which Include Categorical Exclusions For Zepbound. ........................................ 12

        4.    Caremark's Actions Did Not Give Rise To Fiduciary Duties. ................. 13

        5.    Caremark Had No Duty To Advise Plaintiff How To Request a Formulary Exception On Appeal And Plaintiff Would Not Have Been Able To Perfect His Request At That Point............................................... 14

    C.    Plaintiff Lacks Standing To Assert Claims Related To Plans In Which He Did Not Participate. .......................................................................................................... 15

    D.    Incorporation Of Arguments Raised In Caremark's Motion To Dismiss............. 18

CONCLUSION .................................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Pension Ben. Guar. Corp.*,
  332 F. Supp. 2d 231 (D.D.C. 2004) .......................................................................14

*\*Aldridge v. Regions Bank*,
  144 F.4th 828 (6th Cir. July 17, 2025) ..................................................................11

*\*Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*,
  296 F. Supp. 3d 92 (D.D.C. 2017) ...................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................5

*Boley v. Universal Health Servs.*,
  36 F. 4th 124 (3d Cir. 2022) ..................................................................................16

*Camire v. Alcoa USA Corp.*,
  No. 24-1062, 2025 U.S. Dist. LEXIS 59307 (D.D.C. 2025) .................................15

*Clark v. Feder Semo & Bard, P.C.*,
  527 F. Supp. 2d 112 (D.D.C. 2007) .......................................................................11

*Crummett v. Metro. Life Ins. Co.*,
  No. 06-01450, 2007 WL 2071704 (D.D.C. July 16, 2007) .....................................9

*\*Curtis v. Aetna Life Ins. Co.*,
  648 F. Supp. 3d 358 (D. Conn. 2023) ....................................................................17

*\*Elsroth v. Consol. Edison Co.*,
  10 F. Supp. 2d 427 (S.D.N.Y. 1998) ..................................................................8, 13

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F. 3d 410 (6th Cir. 1998) ...........................................................................16, 17

*Gustave-Schmidt v. Chao*,
  226 F. Supp. 2d 191, 196 (D.D.C. 2002) .................................................................5

*\*Harris v. Koenig*,
  602 F. Supp. 2d 39 (D.D.C. 2009) .........................................................................12

*Hinton v. Corr. Corp. of Am.*,
    624 F. Supp. 2d 45 (D.D.C. 2009) ........................................................................5

*Hurley v. Life Ins. Co. of N. Am.*,
    No. 04-0252, 2005 U.S. Dist. LEXIS 43038 (D.D.C. July 7, 2005) ..................................9, 10

*Kekis v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*,
    815 F. Supp. 571 (N.D.N.Y. 1993) ........................................................................13

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ...........................................................................5

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) .....................................................................................14

*Lopiccolo v. Am. Univ.*,
    840 F. Supp. 2d 71 (D.D.C. 2012) .......................................................................6

*Oliver v. Black Knight Asset Mgmt., LLC*,
    812 F. Supp. 2d 2 (D.D.C. 2011) .......................................................................13

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y.*
    *Mellon*,
    775 F.3d 154 (2nd Cir. 2014) ..........................................................................16

*\*Rose v. PSA Airlines, Inc.*,
    80 F. 4th 488 (4th Cir. 2023) ..........................................................................11

*Saltzman v. Independence Blue Cross*,
    384 Fed. Appx. 107 (3d Cir. 2010) ......................................................................8

*\*Saltzman v. Independence Blue Cross*,
    634 F. Supp. 2d 538, 546-47 (E.D. Pa. 2009) ............................................................8

*\*In re Sprint Corp. ERISA Litig.*,
    388 F. Supp. 2d 1207 (D. Kan. 2004) ...................................................................12

*Sys. Council EM-3, Int'l Bhd. of Elec. Workers, AFL-CIO v. AT & T*,
    972 F. Supp. 21 (D.D.C. 1997), *aff'd sub nom. Sys. Council EM-3 v. AT&T*
    *Corp.*, 159 F.3d 1376 (D.C. Cir. 1998) ...............................................................14

*White v. Hilton*,
    263 F. Supp. 3d 8 (D.D.C. 2017) ...................................................................17, 18

*\*Wright v. Metro. Life Ins.*,
    618 F. Supp. 2d 43 (D.D.C. 2009) ...............................................................8, 9, 10

*Zalduondo v. Aetna Life Ins. Co.*,
    845 F. Supp. 2d 146 (D.D.C. 2012) ...................................................................10

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ..............................................................................1, 4, 9, 18

29 U.S.C. § 1132(a)(3) ......................................................................................... *passim*

ERISA Section 405(a)(3) ...................................................................................12

**Other Authorities**

29 C.F.R. § 2560.503-1(g) ...............................................................................15

29 C.F.R. § 2560.503-1(g)(1) ..........................................................................15

29 C.F.R. § 2560.503-1(h) ...............................................................................15

FDA News Release, *FDA Approves First Medication for Obstructive Sleep Apnea*
    (Dec. 20, 2024) https://www.fda.gov/news-events/press-announcements/fda-
    approves-first-medication-obstructive-sleep-apnea ........................................3

Federal Rules of Civil Procedure 8 and 12(b)(6) .............................................5

Federal Rules of Civil Procedure 12(b)(6) ....................................................1, 6

Federal Rules of Civil Procedure 23(b)(1) and (b)(2) .....................................4

Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield ("CareFirst") submits this memorandum in support of its motion to dismiss the Class Action Complaint [ECF No. 1] ("Complaint" or "Compl.") with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim.

## I.    INTRODUCTION

Plaintiff Martin Hamburger challenges his health plan's exclusion of coverage for Zepbound, a GLP-1 weight loss medication. Plaintiff is enrolled in a self-funded health plan ("Plan") sponsored by his employer, for which CareFirst provides claim administration services. He alleges that CareFirst, as well as CaremarkPCS Health, L.L.C. ("Caremark")[1] in its role as pharmacy benefits manager, violated the Employee Retirement and Income Security Act of 1974 ("ERISA") by improperly denying him coverage for Zepbound to treat his obstructive sleep apnea and breached their fiduciary duties under the Plan. As described in more detail below, Plaintiff seeks relief on behalf of himself and other participants and beneficiaries of benefit plans for which CareFirst and Caremark provide administrative services.

The Court should dismiss the Complaint in its entirety with prejudice for two reasons. *First,* the Court should dismiss Count I for benefits due under 29 U.S.C. § 1132(a)(1)(B) because it fails to allege a breach of the Plan by CareFirst. Although Plaintiff alleges that he was entitled to coverage of Zepbound under the Plan's formulary exception process, his Plan excludes from coverage weight-loss drugs such as Zepbound, but even if they were covered (and to be clear, they are not), he fails to allege that he followed Plan procedures for requesting a formulary exception. *Second*, the Court should dismiss Count II for breach of fiduciary duty under 29

---

[1] Plaintiff erroneously named "CVS Caremark" as a defendant; the entity that serves as the pharmacy benefit manager for Plaintiff's Plan is CaremarkPCS Health, L.L.C.

U.S.C. § 1132(a)(3) because it is duplicative of Plaintiff's claim for benefits and because it fails to allege any breach by CareFirst.

For these reasons, and the additional reasons explained below, Plaintiff's claims are fatally flawed. The Court should dismiss the Complaint with prejudice as to CareFirst.

## II.    FACTUAL BACKGROUND

### A. The Plan Excludes Prescription Weight Loss Medications Like Zepbound.

Plaintiff has been a member of the Plan, a BluePreferred Health Reimbursement Account (BLUEFUND), which is a self-funded employee welfare benefit plan, since July 2024. Compl., ¶ 14. CareFirst provides claim administration services for Plaintiff's Plan. Compl., ¶ 26. Caremark is the pharmacy benefit manager for Plaintiff's Plan. *Id*., ¶ 31. Plaintiff's Plan is funded by Destination DC. *See* Exhibit A to Compl., ECF No. 1-1, pg. 4. Plaintiff's evidence of coverage, including attachments, amendments and riders, is a part of the Group Contract issued to Destination DC. *Id.* Destination DC has ultimate control over the terms of the Plan, as shown by the fact that it reserves the right to change, modify, or terminate Plaintiff's Plan in whole or in part. *Id.* Plaintiff's Plan adopted CareFirst Formulary 3—the "list of Prescription Drugs issued by CareFirst and used by health care providers when writing, and Pharmacists, when filling, prescriptions for coverage." *See* Compl., ¶ 38; Compl., Ex A, ECF No. 1-1, pg. 153.

The Plan has an exclusion for "Prescription Drugs for weight loss." Exhibit A to Compl., ECF No. 1-1, pg. 162. Zepbound is a GLP-1 drug used for weight management and is thus subject to the Plan's coverage exclusion. *See* Compl., ¶ 40 n.16 (linking to CareFirst documents). The CareFirst Formulary 3 at issue specifically identifies Zepbound as an "Anti-Obesity Agent." *See* Compl., ¶¶ 38-40; *see also* Exhibits to Caremark's Motion to Dismiss.[2] The Plan allows

---

[2] As Plaintiff notes, Zepbound is a prescription medicine for "adults with … moderate to severe obstructive sleep apnea (OSA) ***and obesity***[.]" *See* Compl., ¶ 37 (emphasis added). In fact, the

Plaintiff's *provider* to submit a request for an exception request, either for a non-formulary drug or on the basis of medical necessity. *See* Compl., Ex. A, ECF No. 1-1, pg. 157 ("The Member's provider may request … Non-Formulary Drug Exceptions" and "an exception based upon Medical Necessity[.]").

**B. Caremark Denies Coverage For Zepbound Because It Is Not Covered Under Plaintiff's Plan.**

Plaintiff was diagnosed with moderate obstructive sleep apnea in 2015, for which he has undergone various surgical procedures and utilized a continuous positive airway pressure ("CPAP") machine. Compl., ¶¶ 16-19. Plaintiff's physician, Dr. Shalini Sitzmann, recommended that Plaintiff take Zepbound, in addition to using the CPAP machine, to treat his obstructive sleep apnea. *Id.*, ¶ 43. Dr. Sitzmann prescribed Zepbound for Plaintiff and submitted a request for coverage of Zepbound for the purpose of treating obstructive sleep apnea. *Id.*, ¶¶ 44-46.

On February 25, 2025, Caremark denied Dr. Sitzmann's preauthorization request for Zepbound, citing the denial reason as "Drug Not Covered/Plan Exclusion – Your request for coverage was denied because your prescription benefit plan does not cover the requested medication." *Id.*, ¶ 46. On April 2, 2025, Plaintiff, through counsel and not his provider, submitted an internal appeal to Caremark. *Id.*, ¶ 51. Plaintiff also asked Caremark to process the internal appeal submitted by his counsel as a Non-Formulary Drug Request. *Id.*, ¶ 53. On April 3, 2025, Caremark issued a Final Adverse Coverage Determination which stated: "Your pharmacy benefit plan does not cover Zepbound." *Id.*, ¶¶ 55-56.

---

FDA approved Zepbound as a treatment for obstructive sleep apnea only "in adults with obesity, to be used in combination with a reduced-calorie diet and increased physical activity," based on its finding that Zepbound treats sleep apnea "[b]y reducing body weight." *See* FDA News Release, *FDA Approves First Medication for Obstructive Sleep Apnea* (Dec. 20, 2024) https://www.fda.gov/news-events/press-announcements/fda-approves-first-medication-obstructive-sleep-apnea.

**C. Plaintiff's Claims.**

Against this backdrop, Plaintiff, on behalf of himself and a putative class, challenges Defendants' alleged "standard practice of categorically excluding all coverage for [Zepbound] to treat obstructive sleep apnea in violation of [ERISA] and the plain terms" of the plans at issue. *See* Compl., ¶ 1. Plaintiff seeks certification of a class under Federal Rules of Civil Procedure 23(b)(1) and (b)(2) and describes the proposed class as:

> All individuals who: (a) have been, are, or will be participants or beneficiaries under ERISA welfare benefit plans administered by CareFirst BlueCross BlueShield with pharmacy benefit management programs administered by CVS Caremark; and, (b) required or will require Zepbound for the purpose of treating obstructive sleep apnea from December 20, 2024, to the present.

Compl., ¶ 70.

Plaintiff alleges that under the "plain terms of [his plan], Zepbound to treat obstructive sleep apnea is covered" and thus Defendants' actions violate the terms of the Plan and the requirements of ERISA. *Id.*, ¶ 6. Plaintiff also alleges that the "categorical denial of Zepbound evinces a claims procedure outside well-established ERISA requirements." *Id.*, ¶ 7.

Pursuant to 29 U.S.C. § 1132(a)(1)(B) (at times referred to in this brief as "Section 502(a)(1)(B)"), Plaintiff seeks the recovery of benefits he alleges are due to him under the Plan, a declaration as to present and future rights to coverage of Zepbound to treat obstructive sleep apnea, a retrospective injunction requiring reprocessing of his claims for Zepbound, and equitable tolling of claim and appeal deadlines for requesting authorization of Zepbound. *See* Compl., ¶¶ 80-81. Pursuant to 29 U.S.C. § 1132(a)(3) (at times referred to in this brief as "Section 502(a)(3)"). Plaintiff seeks a retraction of denials for Zepbound, a corrective notice to be issued regarding same, the reprocessing and processing of all claims for Zepbound, and an equitable surcharge to compensate him for the purchase of less expensive GLP-1 medications

out-of-pocket. *See* Compl., ¶ 92.[3]

## III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, Federal Rules of Civil

Procedure 8 and 12(b)(6) require a plaintiff "to provide . . . more than labels and conclusions[]"

to support his claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must

present "a claim to relief that is plausible on its face." *Id*. at 570.  Plausibility requires more than

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating a complaint, a court rejects "pleadings that . . . are no more than

conclusions[]" as "not entitled to the assumption of truth." *Id.* at 679; *see also Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences

drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor

must the court accept legal conclusions cast in the form of factual allegations."). The court then

determines whether the factual allegations that remain "plausibly give rise to an entitlement to

relief." *Iqbal*, 556 U.S. at 679.

"[A] court may consider on a motion to dismiss . . .  'the facts alleged in the complaint,

documents attached as exhibits or incorporated by reference in the complaint,' . . . or documents

'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by

the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corr. Corp.*

*of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations omitted); *see also Gustave-Schmidt v.*

*Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (court may consider "the facts alleged in the

---

[3] Plaintiff also seeks the same relief for putative class members. *See* Compl., ¶¶ 80-81, 92. While at this time CareFirst is seeking dismissal only of Plaintiff's claims, CareFirst reserves the right to challenge the validity of the putative class members' claims at the appropriate time.

complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice"). "A document outside the complaint may be considered on a motion to dismiss under Rule 12(b)(6) if it is 'referred to in the complaint' and is 'integral to' the plaintiff's claim." *Lopiccolo v. Am. Univ.*, 840 F. Supp. 2d 71, 73 n.2 (D.D.C. 2012) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).

## IV.    ARGUMENT

### A.    The Section 502(a)(1)(B) Claim Fails Because Plaintiff Does Not Allege Facts Showing That CareFirst Breached The Plan.

As explained above, the Plan has an exclusion for "Prescription Drugs for weight loss." Exhibit A to Compl., ECF No. 1-1, pg. 162.  Zepbound is a GLP-1 drug used for weight management and is therefore excluded from coverage under the terms of the Plan. *See* Compl., ¶ 40 n.16 (linking to CareFirst documents). The CareFirst Formulary 3 at issue specifically identifies Zepbound as an "Anti-Obesity Agent." *See* Compl., ¶¶ 38-40; *see also* Exhibits to Caremark's Motion to Dismiss.[4] Plaintiff focuses on the Plan's formulary exception process, but the formulary is a red-herring because the Plan's non-formulary exception process *does not apply* in the first instance where, as here, the entire category of drugs are not covered by the Plan. There are no covered weight-loss drugs under the Plan because the Plan does not cover weight loss drugs.

Plaintiff also could not have sought a non-formulary exception, as he concedes that Zepbound was on the CareFirst Formulary 3 at the times he allegedly sought a non-formulary exception. *Compare* Compl., ¶¶ 39-40 ("Zepbound was included on the CareFirst Formulary 3 [and] removed from the CareFirst Formulary 3 on July 1, 2025[.]") *with* ¶¶ 46, 55 (describing

---

[4] *See* n.2.

denial on February 25, 2025 and appeal determination on April 3, 2025).[5] Simply put, Plaintiff could not have sought a non-formulary exception for a drug *on CareFirst's formulary*.

Even if the non-formulary exception process applied, Plaintiff does not allege that he sought an exception using the procedure set out in the Plan. The non-formulary exception process is intended to allow members, through their providers, to seek authorization for a drug that is an alternative to a covered drug on the formulary. *See* ECF No. 1-1, pg. 157 ("The Member's provider may request … Non-Formulary Drug Exceptions – a request to cover a Non-Formulary Drug" and "[t]he Member's provider may request an exception based upon Medical Necessity by submitting an exception form to CareFirst."),

Despite the Plan's clear terms, nowhere in the Complaint does Plaintiff allege that *his provider* submitted a non-formulary exception request. Rather, Plaintiff alleges that *Plaintiff, through counsel,* submitted a non-formulary exception request:

> Mr. Hamburger, through counsel, submitted an internal appeal to CVS Caremark.
>
> \*      \*      \*
>
> To the extent that his prior authorization request was denied because of a formulary exception, Mr. Hamburger asked CVS Caremark to process his request for Zepbound as a Non-Formulary Drug Request.

*See* Compl., ¶¶ 52-53.

The Complaint's exhibits confirm that Plaintiff's provider did not submit a non-formulary exception request. *See* Compl., Ex. C, ECF No. 1-3, pg. 4. ("CareFirst should reconsider its exclusion of Zepbound for obstructive sleep apnea in general or, at a minimum,

---

[5] CareFirst's Prescription Guidelines explain that coverage for drugs listed on the formulary is "subject to a member's plan benefit."  Compl. ¶ 41.  In other words, while the Plan provides coverage for prescription drugs on the CareFirst Formulary 3, those drugs may otherwise be excluded under the terms of the Plan — *e.g.,* the "Exclusions" identified in the Prescription Drug Rider.

approve an exception for coverage for Mr. Hamburger."). The exception request plainly does not comply with the Plan's requirements for a non-formulary exception. These requirements exist for a good reason: an exception, whether as a non-formulary exception or a medical necessity exception, requires review of Plaintiff's clinical information as conveyed by his medical provider.

Where, as here, plan terms are clear, Section 502(a)(1)(B) does not permit the Court to grant an exception to those terms. *See Wright v. Metro. Life Ins.*, 618 F. Supp. 2d 43, 57 (D.D.C. 2009) (holding that "the Court cannot read into the Plan coverage where none exists" and "where, as here, the plain language of a Plan's coverage provision leaves no room for ambiguity, it is reasonable to interpret the provision as written") (internal citations and revisions omitted). Further, "where the Plan includes terms that otherwise comport with the ERISA … it is not for the Court to question the sensibility of those terms, which were presumably negotiated between the plaintiff's employer and the defendants, without any legal or factual support for doing so." *Id.* at 58; *Saltzman v. Independence Blue Cross*, 634 F. Supp. 2d 538, 546-47 (E.D. Pa. 2009) (where plans terms are "unambiguous and Defendants' interpretation is consistent with the unambiguous terms, then Plaintiffs' § 502(a)(1)(B) claim must fail"), *aff'd by Saltzman v. Independence Blue Cross*, 384 Fed. Appx. 107 (3d Cir. 2010); *see also Elsroth v. Consol. Edison Co.*, 10 F. Supp. 2d 427, 436-37 (S.D.N.Y. 1998) ("[A]n insurer who denies benefits under a plan governed by ERISA must rely on the express language of the plan itself. It may not insert its own terms into the plan."). Because Plaintiff does not allege that his provider submitted a non-formulary exception request to Caremark (or to CareFirst) in compliance with the Plan's terms, Plaintiff cannot show any breach of the Plan.

Furthermore, Plaintiff does not allege any facts that support a Section 502(a)(1)(B) claim

against CareFirst specifically. The Complaint is devoid of any non-conclusory facts regarding

any action taken *by CareFirst* in breach of the Plan. *See generally* Compl. ¶¶ 43-65 (lacking any

alleged facts about actions taken by CareFirst).

For these reasons, the Court should dismiss Plaintiff's Section 502(a)(1)(B) claim for

ERISA benefits against CareFirst.

**B.    The Section 502(a)(3) Claim Fails For Multiple Reasons.**

**1.    Plaintiff Has An Adequate Remedy At Law Under 29 U.S.C. § 1132(a)(1)(B).**

Because Plaintiff has an adequate remedy at law under Section 1132(a)(1)(b), his claims

for violation of Section 1132(a)(3) are duplicative and should be dismissed.

"[T]he majority of circuits" that have decided whether a Section 502(a)(3) claim is barred

as duplicative of a Section 502(a)(1)(B) claim "have held that a breach of fiduciary duty claim

cannot stand where a plaintiff has an adequate remedy through a claim for benefits under §

[1132](a)(1)(B)." *See Wright*, 618 F. Supp. 2d at 55. (collecting cases). This Court has sided with

these circuits and "found that a plaintiff cannot maintain an equitable claim for a breach of

fiduciary duty where the ERISA provides an adequate remedy at law." *See id.* at 55-56 (citing

*Clark v. Feder Semo & Bard, P.C.*, 527 F. Supp. 2d 112, 117 (D.D.C. 2007)) ("Because the

gravamen of plaintiff's complaint is that she was improperly denied benefits, the remedies under

§ [1132] (a)(1)(B) would make plaintiff whole if she were to prevail on her claim. Plaintiff

therefore has an adequate remedy under § [1132](a)(1)(B), and accordingly her § [1132](a)(3)

claim must be dismissed."); *Crummett v. Metro. Life Ins. Co.*, No. 06-01450, 2007 WL 2071704,

at *3 (D.D.C. July 16, 2007) (concluding "with little hesitancy that [plaintiff's] remedies

pursuant to subsection (1)(B) are adequate and that her fiduciary-duty claim must be

dismissed"); *Hurley v. Life Ins. Co. of N. Am.*, No. 04-0252, 2005 U.S. Dist. LEXIS 43038, at

*32 (D.D.C. July 7, 2005) (concluding that "the claim for ERISA breach of fiduciary duty is preempted by the existence of a valid claim . . . for denial of benefits").[6] The *Wright* court ultimately concluded "that because awarding the plaintiff relief under (a)(1)(B) would fully redress his alleged injury, any claim the plaintiff is making for equitable relief under § 1132(a)(3) is precluded." *See Wright*, 618 F. Supp. 2d at 56; *see also Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 155 (D.D.C. 2012) (where harm flowing from alleged fiduciary breaches is inseparable from harm flowing from allegedly improper denial of benefits, plaintiff fails to establish entitlement to equitable relief under § 1132(a)(3)).

Here, Plaintiff's breach of fiduciary claim amounts to nothing more than a thinly-disguised repackaging of his claim for ERISA benefits under Section 502(a)(1)(B), because the equitable relief he seeks is, at bottom, coverage for prescription medication benefits. *Compare, e.g.,* Compl., ¶ 80 ("Mr. Hamburger and the Class are entitled to recover benefits due to them under the terms of their plans. They are also entitled to a clarification and declaration of present and future rights to coverage of Zepbound to treat obstructive sleep apnea[.]") *with id.* at ¶ 87 ("CVS Caremark repeatedly violated is obligations by … drafting and implement policies [regarding] … rendering a determination of coverage for Zepbound to treat obstructive sleep apnea … in response to claims for Zepbound[.]"). And as relief for his Section 502(a)(3) claim, Plaintiff asks the Court to order Defendants to "[r]etract" their denial and to reprocess his claim to pay him benefits. *Id.*, ¶ 92.

Nor does Plaintiff's request for "equitable and remedial relief as the Court may deem appropriate," *id.*, save his breach of fiduciary duty claim. "[A] court must look past the label

---

[6] Although *Hurley* is a summary judgment decision, the principles articulated in the case are equally applicable at the motion to dismiss stage.

applied by the plaintiff to determine if the relief is appropriately framed in equity." *Clark v*, 527 F. Supp. 2d at 117 n.1 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)). Where equitable relief requested by plaintiff is essentially "a claim for benefits expressed in equitable language," plaintiff has not sought "appropriate equitable relief" under Section 502(a)(3). *See Clark*, 527 F. Supp. 2d at 117 n.1 (citations omitted).

Lastly, Plaintiff's claim for an equitable "surcharge" (Compl., ¶ 92(d)) does not save his claim. Recent decisions from Courts of Appeal have made clear that an equitable surcharge is not an available remedy under Section 502(a)(3). *See Aldridge v. Regions Bank*, 144 F.4th 828 (6th Cir. July 17, 2025); *see also Rose v. PSA Airlines, Inc.*, 80 F. 4th 488 (4th Cir. 2023). In *Aldridge*, plaintiffs argued they were entitled to an equitable surcharge measured by amounts that should have been paid to them as benefits under their plan. *Aldridge*, 144 F.4th at 847. In rejecting a surcharge as an available equitable remedy, the Sixth Circuit concluded that Section 503(a)(3) "does not permit plan participants to seeks monetary relief from fiduciaries for the losses that they suffer because of the fiduciaries' breach of their duties." *Id.* at 849; *see also Rose*, 80 F.4th at 504 (rejecting surcharge as available equitable remedy and stating, "Plaintiffs that seek 'merely personal liability upon the defendant to pay a sum of money' ask for legal, not equitable relief under § 502(a)(3)") (citation omitted). Here, Plaintiff similarly improperly seeks "surcharge" relief as compensatory damages for amounts he alleged he paid for "less expensive GLP-1 medications, out-of-pocket." Compl., ¶ 92.

### 2. Plaintiff Fails To Allege That CareFirst Breached A Fiduciary Duty.

Even if Plaintiff's breach of fiduciary claim were not precluded as duplicative of his benefits claim, it still fails because Plaintiff does not allege a breach of fiduciary duty by CareFirst. Plaintiff alleges only that "CareFirst *likely* knew of these fiduciary duty violations by

CVS Caremark and joined in them." *Id.*, ¶ 88 (emphasis added). This conclusory allegation falls short of alleging a plausible claim for breach of fiduciary duty against CareFirst.

Under ERISA Section 405(a)(3), a co-fiduciary is liable for another's breach of fiduciary duty only when the co-fiduciary has *actual knowledge* of the breach. *See Harris v. Koenig*, 602 F. Supp. 2d 39, 62 (D.D.C. 2009) (citing *In re Sprint Corp. ERISA Litig.,* 388 F. Supp. 2d 1207 (D. Kan. 2004)). While the *Harris* court found that plaintiff had sufficiently alleged knowledge of a co-defendant's breach of duty, the court distinguished its finding from that in *In re Sprint*, where the court dismissed a co-fiduciary liability claim because the complaint contained "no factual allegations [as to co-fiduciary liability], but instead simply parrot[ed] the language of the co-fiduciary liability statute." *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. at 1230. The court found that plaintiff's "conclusory allegations" on this point were insufficient and granted the motion to dismiss.

This case is like *In re Sprint.* Plaintiff pleads no facts showing that CareFirst had actual knowledge of Caremark's alleged fiduciary breaches, relying instead on the conclusory allegation that CareFirst *likely* knew of these alleged fiduciary breaches. This is insufficient pleading.

### 3. CareFirst Applied The Plan Terms Set By Plaintiff's Employer, Which Include Categorical Exclusions For Zepbound.

As explained above, Plaintiff alleges that his Plan is self-funded, Compl., ¶ 14, meaning that his employer Destination DC engaged CareFirst to administer claims pursuant to the Plan's terms. CareFirst and Caremark had a duty to apply the Plan terms, including any exclusions. Because Plaintiff's pleading acknowledges that they did so, his breach of fiduciary claim fails.

Claims administrators owe duties to the plans to follow plan terms, such as a plan's coverage exclusion for certain categories of drugs. "[A]n insurer who denies benefits under a

plan governed by ERISA must rely on the express language of the plan itself. It may not insert its own terms into the plan." *See Elsroth*, 10 F. Supp. 2d at 436-37 (citing *Velez v. Prudential Health Care Plan of N.Y., Inc.*, 943 F. Supp. 332, 341 (S.D.N.Y. 1996) ("a fiduciary . . . cannot disregard any policy requirement, nor can it implicitly incorporate into the policy any term that does not expressly appear")); *Kekis v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*, 815 F. Supp. 571, 579 (N.D.N.Y. 1993) (noting that a "fiduciary who ignores the terms of the policy and inserts its own terms acts arbitrarily and capriciously").

Here, CareFirst and Caremark had a duty to apply the explicit Plan terms, including exclusions. The Plan expressly excludes coverage of prescription drugs for weight loss and does not provide any exceptions to that exclusion.  Plaintiff's claim therefore fails because he effectively charges CareFirst and Caremark with a breach of fiduciary duty for failing to ignore the express terms of the Plan.

### 4.    Caremark's Actions Did Not Give Rise To Fiduciary Duties.

Caremark's denial for Zepbound amounts to a "ministerial" application of the Plan's exclusion for weight loss drugs that does not carry fiduciary duties.

ERISA defines an administrator as a fiduciary "only to the extent that he acts in such a capacity in relation to a plan." *See Oliver v. Black Knight Asset Mgmt., LLC*, 812 F. Supp. 2d 2, 12 (D.D.C. 2011) (citing *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000)). Conclusory allegations as to fiduciary status are insufficient to establish that a person was acting as a fiduciary. *See Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1,* 296 F. Supp. 3d 92, 96 (D.D.C. 2017) (citing *Strumsky v. Wash. Post Co.*, 922 F. Supp. 2d 96, 104 (D.D.C. 2013) ("[C]onclusory allegations that a person was acting as a fiduciary are not sufficient.")). Actions such as the "application of rules determining eligibility" under a plan are

purely ministerial and thus not fiduciary acts. *See Anthony*, 296 F. Supp. 3d at 97 n.2.[7]

Since prescription drugs for weight loss were excluded from coverage under the Plan, the actions of Caremark (to the extent they can be attributed to CareFirst) in denying coverage were merely a ministerial application of the Plan's exclusions that did not give rise to fiduciary duties.

### 5. Caremark Had No Duty To Advise Plaintiff How To Request a Formulary Exception On Appeal And Plaintiff Would Not Have Been Able To Perfect His Request At That Point.

Caremark was under no obligation to process Plaintiff's internal appeal as a non-formulary exception request, as he alleges in the Complaint, or to inform him how to request such an exception at the appeal phase. Caremark (and, by extension, CareFirst) thus did not breach any fiduciary duties. Compl., ¶¶ 62-63, 90-91. As discussed above, the non-formulary exception process was not applicable because the Plan had an exclusion for weight loss drugs.

Even assuming such a process applied, Plaintiff's allegations are deficient. Plaintiff alleges that he submitted a "pre-authorization request" for Zepbound and subsequently appealed the denial of that request. *Id.*, ¶¶ 46, 51. While Plaintiff takes issue with the fact that Caremark's final adverse benefit determination failed to indicate "whether any additional information was

---

[7] A plan's selection of exclusions is a ministerial function that does not give rise to fiduciary duties. These activities are more appropriately analogized to "settlor" functions that do not give rise to fiduciary duties, so long as those decisions comply with ERISA's requirements. *See Lockheed Corp. v. Spink*, 517 U.S. 882, (1996); *see also Adams v. Pension Ben. Guar. Corp.*, 332 F. Supp. 2d 231, 238 (D.D.C. 2004) ("When employers or other plan sponsors undertake [to adopt, modify, or terminate a plan] they do not act as fiduciaries.") (citations omitted); *Sys. Council EM-3, Int'l Bhd. of Elec. Workers, AFL-CIO v. AT & T*, 972 F. Supp. 21, 30–31 (D.D.C. 1997), *aff'd sub nom. Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376 (D.C. Cir. 1998) (quoting *Walling v. Brady*, 119 F.3d 233, 238 (3d Cir. 1997)) ("As the Third Circuit has stated regarding the distinction between fiduciary and settlor functions, 'Discretion for the purpose of determining the applicability of fiduciary obligations means solely that the plan administrator is making a choice reserved to it by the plan document in administering the plan, not tinkering with the plan document itself.'"). The Plan did not provide any discretion to Caremark to make exceptions to the weight loss drug exclusion.

necessary in order to perfect a Non-Formulary Drug Request, as required under 29 C.F.R. § 2560.503-1(g)(1)," *id.*, ¶ 63, that subsection of the code applies only to *initial* adverse benefit determinations. Requirements for responses to appeals of adverse benefit determinations appear in a different subsection of the code and do not include the requirements Plaintiff cites. *Compare* 29 C.F.R. § 2560.503-1(g) ("Manner and content of notification of benefit determination.") *with* 29 C.F.R. § 2560.503-1(h) ("Appeal of adverse benefit determination."). Because Plaintiff had already exhausted the appeals available under the Plan, there was no reason for Caremark to provide him with any additional information necessary to perfect his claim. Compl., ¶ 57.

### C.   Plaintiff Lacks Standing To Assert Claims Related To Plans In Which He Did Not Participate.

While Plaintiff purports to bring his ERISA claims on behalf of participants and beneficiaries of *all* health benefit plans for which Defendants provide administrative services, *see, e.g.,* Compl., ¶¶ 1, 70, 80, 83, he lacks standing to bring claims related to any plans in which he was not a participant.

It is axiomatic that an ERISA plaintiff must have Article III standing. *See Camire v. Alcoa USA Corp.*, No. 24-1062, 2025 U.S. Dist. LEXIS 59307, *15 (D.D.C. 2025) ("There is no ERISA exception to Article III [standing]") (citing *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 590 (2020); *see also Wilcox v. Georgetown Univ.,* No. 18-422, 2019 U.S. Dist. LEXIS 3082, at *25 (D.D.C. Jan. 8, 2019) (explaining that Sections 502(a)(2) and (a)(3) "provide standing to beneficiaries to sue fiduciaries for imprudent actions" but "do[] not automatically satisfy constitutional standing for all claims")).

Federal Courts of Appeal have grappled with the issue of class standing for ERISA plaintiffs who seek to litigate claims on behalf of members of plans in which the named plaintiffs

do not participate, leading to a circuit split on this issue (one that the D.C. Circuit has yet to weigh in on). On one side of this split is the Second Circuit, which examines the named plaintiff's standing to bring class claims at the motion to dismiss phase.[8] CareFirst submits that this approach, which focuses on addressing fundamental principles of standing early in the case, is the right one.

Applying a two-part test, the Second Circuit concluded that named plaintiffs in a putative class action lacked standing to assert a breach of duty claim on behalf of absent class members against a trustee in a trust in which the named plaintiff did not invest. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154 (2nd Cir. 2014). The test examined whether the plaintiff plausibly alleged: "(1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendants, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to the other members of the putative class by the same defendants." *Id.* at 161 (citations omitted). On the second prong, the Second Circuit found that the plaintiffs' claims did "not implicate the 'same set of concerns' as those of absent class members who purchased certificates issued by trusts in which no named Plaintiff invested," and as such, the plaintiffs lacked standing. *Id.* at 163.

---

[8] On the other side of this divide, some circuits, like the Sixth Circuit, have ruled that once a potential ERISA class representative establishes individual standing to sue for alleged injuries arising out of his own plan, there is no additional constitutional standing requirement to represent putative class members of other plans to which the plaintiff does not belong. *See, e.g., Fallick v. Nationwide Mut. Ins. Co.*, 162 F. 3d 410 (6th Cir. 1998); *see also Boley v. Universal Health Servs.*, 36 F. 4th 124, 133 (3d Cir. 2022) (finding standing for named plaintiffs and explaining that defendants' "concerns regarding the representation of absent class members might implicate class certification or damages but are distinct from the requirements of Article III").

Applying this standard in the ERISA context, a Connecticut district court found that a named plaintiff did not have standing to bring a class claim on behalf of "each beneficiary of a plan administered by Aetna who was denied benefits," including those in which he did not participate, because the class claims did not implicate the same set of concerns as plaintiff's individual claims. *Curtis v. Aetna Life Ins. Co.,* 648 F. Supp. 3d 358, 369 (D. Conn. 2023).[9] In *Curtis*, plaintiff challenged Aetna's alleged practice of denying benefits based upon medically necessary definitions contained in internal clinical policy bulletins ("CPBs") that limited the plans' definitions of medically necessary. *Id.* at 361. The court found that plaintiff did not have class standing because, among other things, plaintiff would "have to prove CPB-by-CPB that the CPB medical necessity definitions conflict with [each] Plans' definition because each challenge will require its own distinct medical evidence, including expert testimony." *Id.* at 370. The court also found that plaintiff's individual claim gave him "no incentive to develop the medical evidence necessary to prove class allegations." *Id.* at 371. Simply put, "[c]lass standing does not exist even when [plaintiff's] challenges '[v]iewed at a high level … raise similar questions.'" *Id.* (citation omitted)[10]

While CareFirst is aware of a case in this District in which the court deferred a challenge to class standing until the class certification phase, *see White v. Hilton*, 263 F. Supp. 3d 8 (D.D.C. 2017), CareFirst submits that this case is factually distinguishable from *White*. There, the court noted that the named plaintiffs and the putative class were allegedly denied benefits

---

[10] Relying on Second Circuit precedent, the district court rejected plaintiff's argument based on *Fallick* that his standing to represent the class should be addressed at the class certification stage. The court found that standing is distinct from whether the named plaintiff is an adequate class representative. *Curtis*, 648 F. Supp 3d. at 372-73 (collecting cases where district court addressed class standing at motion to dismiss phase).

because their plans all used the same flawed method for computing employee service time for purposes of calculating retirement benefits. *Id.* at 13-14. By contrast, in this case, Plaintiff would need to show that each and every welfare benefit plan administered by CareFirst and Caremark contained the same exclusion for "prescription drugs for weight loss," that each class member properly sought a non-formulary exception, and that a claim-by-claim review of each class member's medical condition required a non-formulary exception.

Moreover, the clear language of the ERISA statute bars plaintiff from bringing claims on behalf of members of other plans. Section 502(a)(1)(B) provides that an action "may be brought *by a participant or beneficiary* to recover benefits *due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Similarly, a claim for breach of fiduciary duty under Section 502(a)(3) may be brought only by "a *participant, beneficiary*, or fiduciary (A) *to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan*, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) *to enforce any provisions of [ERISA] or the terms of the plan*." 29 U.S.C. § 1132(a)(3) (emphasis added). Neither section authorizes a plaintiff to assert ERISA claims on behalf of participants and beneficiaries of other benefit plans to which the plaintiff does not belong.

### D.    Incorporation Of Arguments Raised In Caremark's Motion To Dismiss

CareFirst hereby incorporates the arguments raised in Caremark's Motion to Dismiss to the extent such arguments are equally applicable to CareFirst.

### CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint with prejudice against CareFirst for failure to state a claim.

Dated: November 26, 2025                    Respectfully submitted,

By:      /s/ Tracy A. Roman
      Tracy A. Roman (D.C. Bar No. 443718)
      Crowell & Moring LLP
      1001 Pennsylvania Avenue, N.W.
      Washington, DC  20004-2595
      Telephone: (202) 624-2500
      Facsimile: (202) 628-5116
      Email: troman@crowell.com

Thomas Hardy (*pro hac vice pending*)
Crowell & Moring LLP
455 N. Cityfront Plaza Drive
Suite 3600
Chicago, IL 60611
Tel: (312) 321-4200
thardy@crowell.com

Carol B. Lewis (*pro hac vice pending*)
Crowell & Moring LLP
515 South Flower Street
41st Floor
Los Angeles, CA 90071
Tel: (213) 622-4750
clewis@crowell.com

*Attorneys for Defendant Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield*