**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**MARTIN HAMBURGER**,

Plaintiff,

v.

**CAREFIRST BLUECROSS
BLUESHIELD**, *et al.*,

Defendants.

---

Case No. 1:25-cv-03000 (TNM)

**MEMORANDUM OPINION**

Recent years have seen the meteoric rise of GLP-1 drugs.  Originally developed for

diabetes, these drugs also ameliorate obesity—prompting a surge in demand.  Martin Hamburger

is one of the many people who have turned to these medications.  His doctor prescribed him

Zepbound after the Food and Drug Administration ("FDA") approved the drug for treating

obstructive sleep apnea in overweight people.  Hamburger wants his health insurer to cover the

drug, but it refuses to do so.  To challenge this reimbursement denial, Hamburger sues—both for

himself and on behalf of a putative class—under the Employee Retirement Income Security Act

("ERISA").  He advances claims for denial of benefits and breach of fiduciary duty.  Neither

survives dismissal.  Because Hamburger's health plan excludes Zepbound and Hamburger has

not plausibly alleged any breach of fiduciary duty, his lawsuit cannot proceed.

**I.**

Hamburger participates in a health plan sponsored by Destination DC, a tourism non-

profit in the District of Columbia.  Group Contr., ECF No. 1-1, at 4;[1] *see About Destination DC*,

---

[1]  All page numbers refer to the pagination generated by CM/ECF.

https://washington.org/dc-information/about-destination-dc [https://perma.cc/D3YH-HZT5]. The plan is governed by a Group Contract between Destination DC and CareFirst BlueCross BlueShield ("CareFirst"). Group Contr. at 4. As the plan's administrator, CareFirst enlists CaremarkPCS Health ("Caremark") as a "pharmacy benefit manager" to manage claims for prescription drug benefits. Compl., ECF No. 1, ¶ 31.

Hamburger has obstructive sleep apnea—a "sleep disorder in which an individual's upper airway becomes blocked while asleep." *Id.* ¶¶ 16, 34. To treat that condition, his doctor prescribed Zepbound. *Id.* ¶ 20. Zepbound activates hormones secreted from the intestine, including glucagon-like peptide-1 (GLP-1), to reduce appetite. *See What is Zepbound*, Eli Lilly, https://tinyurl.com/37e4af5n [https://perma.cc/WEM5-EQYY]. Recognizing that obstructive sleep apnea "is more common in people who [are] overweight or obes[e]" and that Zepbound "reduc[es] body weight," the FDA approved Zepbound "for the treatment of moderate to severe obstructive sleep apnea . . . in adults with obesity, to be used in combination with a reduced-calorie diet and increased physical activity." *FDA Approves First Medication for Obstructive Sleep Apnea*, U.S. Food and Drug Admin. (Dec. 20, 2024) ("FDA Approval"), https://www.fda.gov/news-events/press-announcements/fda-approves-first-medication-obstructive-sleep-apnea [https://perma.cc/CN3G-GPYQ].

Hamburger wants his health insurer to pay for Zepbound. So, his doctor submitted a coverage request to CareFirst. Compl. ¶¶ 44–45. Acting as pharmacy benefit manager, Caremark denied the request. *Id.* ¶ 46. The denial letter stated that Hamburger's "prescription benefit plan does not cover the requested medication." Initial Adverse Determination Notice, ECF No. 1-2, at 2. Caremark further explained that "[t]his decision relate[d] specifically to

2

coverage provided under [Hamburger's] prescription benefit plan and d[id] not involve any determination of medical judgment." *Id.*

Undeterred, Hamburger's attorney appealed the denial. Compl. ¶ 51; *see* Internal Appeal Letter, ECF No. 1-3, at 2–4. Caremark did not budge. In another denial letter, it repeated that Hamburger's "pharmacy benefit plan does not cover Zepbound," referring him "to the prescription benefit drug section in [his] Explanation of Coverage document." Final Adverse Determination Notice, ECF No. 1-4, at 2.

With no other internal recourse, Hamburger sued CareFirst and Caremark here. His Complaint advances two ERISA claims—one for denial of benefits under 29 U.S.C. § 1132(a)(1)(B), the other for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). Compl. ¶¶ 78–92. Hamburger also seeks to certify a class of all "participants or beneficiaries covered under ERISA welfare benefit plans administered by [CareFirst] with pharmacy benefit management programs administered by [Caremark]" who "required or will require Zepbound for the purpose of treating obstructive sleep apnea." *Id.* ¶ 70. CareFirst and Caremark each moved to dismiss the Complaint, and their motions are now ripe. *See* ECF Nos. 19, 23.

## II.

In addressing a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see* Fed. R. Civ. P. 12(b)(6). The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court need not credit "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Assessing

3

whether a claim survives dismissal is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 21 (D.D.C. 2018) (quoting *Iqbal*, 556 U.S. at 679), *aff'd sub nom.*, *Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019).

Aside from the complaint, the Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). So too for "those portions of documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Page v. Comey*, 137 F.4th 806, 814 (D.C. Cir. 2025) (cleaned up).

### III.

Hamburger cannot maintain either his benefits or fiduciary-duty claim. The dismissal of his individual claims also dooms his putative class action. The Court addresses each in order.

### A.

Hamburger asserts that Defendants are liable under ERISA for refusing to pay for Zepbound even though his health plan entitles him to reimbursement. Compl. ¶¶ 78–81. That claim's downfall is its false premise: Rather than covering Zepbound, the Group Contract excludes it.

ERISA authorizes an individual "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "That statutory language speaks of *enforcing* the terms of the plan, not of *changing* them." *Heimeshoff v. Hartford Life & Accident*

*Ins. Co.*, 571 U.S. 99, 108 (2013) (cleaned up).  Because Hamburger's claim depends on the Group Contract, the Court walks through that document's key provisions.

The Group Contract or "Evidence of Coverage" is "th[e] agreement, which includes any attachments, amendments and riders, if any, between [Destination DC] and CareFirst."  Group Contr. at 9.  The parties' dispute centers on the "Prescription Drug Benefits Rider" that amends the Group Contract.  *Id.* at 152–62.  The Rider "contains specific exclusions and limitations applicable to Prescription Drug benefits that are in addition to the exclusions contained in the Evidence of Coverage."  *Id.* at 152.  The Rider's exclusions also apply to CareFirst's formulary, which lists the drugs CareFirst covers subject to a member's plan.  *See id.* at 153.  When Hamburger sought coverage, Zepbound was included on CareFirst's formulary among the "anti-obesity agents."  *See* CareFirst Formulary 3, ECF No. 19-1, at 4–5; *see also* Compl. ¶¶ 39–40 (discussing Zepbound's inclusion on CareFirst Formulary 3).

Hamburger's argument rests on one provision from the Rider.  *See* Compl. ¶ 36.  It states that "benefits will be provided for a Prescription Drug dispensed by a Pharmacist for self-administered-use on an outpatient basis for the treatment of a condition for which benefits are provided under the terms of the Evidence of Coverage."  Group Contr. at 155.  The Rider defines "Prescription Drug" as "[a] drug, biological, product or compounded prescription intended for outpatient use that carries the FDA legend 'may not be dispensed without a prescription.'"  *Id.* at 154.  Without any further contractual anchor, Hamburger contends that "[o]bstructive sleep apnea is a covered medical condition under the Plan" and that he thus is entitled to coverage for Zepbound in treating it.  *See* Compl. ¶ 35.  So far, so good.

But the Rider foils Hamburger's bid only a few pages later.  The "Exclusions" section disclaims coverage for 15 categories of products, including "[r]outine immunizations and

5

boosters" and most vitamins.  Group Contr. at 161–62.  Most unfortunate for Hamburger is

exclusion 13, which states that "[b]enefits will not be provided" for "Prescription Drugs for

weight loss."  *Id.*  That exclusion applies to Zepbound, a GLP-1 drug that CareFirst's formulary

designated as an "anti-obesity agent[]."  CareFirst Formulary 3 at 4–5.  By its own terms, the

Group Contract thus defeats Hamburger's claim for benefits.  *See Stewart v. Nat'l Educ. Ass'n*,

471 F.3d 169, 175 (D.C. Cir. 2006) (affirming dismissal where plaintiff could not "escape the

plain language in the Plan Document and Group Contract that show[ed] that he ha[d] not stated a

claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B)").

Hamburger wants the Court to put on blinders.  He zeroes in on the Rider's generic grant

of prescription drugs for covered conditions.  Compl. ¶ 36; *see* Group Contr. at 155.  But even if

obstructive sleep apnea counts as a covered condition, Hamburger's argument is still too myopic.

Ignoring the exclusions would flout a "cardinal principle of contract construction: that a

document should be read to give effect to all its provisions and to render them consistent with

each other."  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995); *see

also* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 167

(2012) ("The text must be construed as a whole.").  That maxim rings especially true for ERISA,

which requires benefits plans to "be enforced as written."  *See M & G Polymers USA, LLC v.

Tackett*, 574 U.S. 427, 435 (2015) (cleaned up); *see also Wright v. Metro. Life Ins.*, 618 F. Supp.

2d 43, 57 (D.D.C. 2009) (emphasizing that "the Court cannot read into the Plan coverage where

none exists").  Read as a whole, the Group Contract carves out weight loss drugs like Zepbound.

Tacitly recognizing the exclusion's force, Hamburger tries to recast Zepbound as

something other than a weight-loss drug.  He reasons that the "FDA's authorization of Zepbound

to treat obstructive sleep apnea is a separate and distinct indication from its original approval as

an anti-obesity medication." Pl.'s Opp'n, ECF No. 25, at 18. But the FDA's authorization hurts him more than it helps. Recall that the FDA approved Zepbound for obstructive sleep apnea only "in adults with obesity, to be used in combination with a reduced-calorie diet and increased physical activity." FDA Approval, *supra* Part I. That decision flowed from the agency's finding that "[b]y reducing body weight, . . . Zepbound also improves" obstructive sleep apnea. *Id.* In other words, Zepbound helps with sleep apnea *because* it promotes weight loss, not as a separate, unrelated benefit. If anything, then, the FDA's approval confirms that Zepbound is a weight-loss drug.

Hamburger does not stop there. He points out that "CareFirst covers GLP-1 medications that treat diabetes"—even Mounjaro, which is "chemically identical" to Zepbound. Pl.'s Opp'n at 19. To Hamburger, this signals that the "decision to exclude all coverage of Zepbound to treat obstructive sleep apnea is plausibly in violation of the Plan terms." *Id.* at 19–20. But that does not follow. Mounjaro, after all, is FDA-approved only for treating diabetes—whether or not the person is also obese. *See* FDA Indications for Mounjaro at 1, U.S. Food and Drug Admin., https://www.accessdata.fda.gov/drugsatfda_docs/label/2026/215866s009lbl.pdf# [https://perma.cc/T5DD-GNSV]. Hamburger's attempt to equate Zepbound with Mounjaro fails.

More broadly, Hamburger conflates direct and indirect effects. To understand how, consider one adjacent example. Studies have suggested that obesity amplifies the risk of depression. *See 9 Frequently Asked Questions About Obesity and Depression*, HealthLine, https://www.healthline.com/health/depression/obesity-and-depression [https://perma.cc/XWR3-EG4S]. By combating obesity, GLP-1 drugs like Zepbound thus might indirectly alleviate depression. But that secondary consequence does not make Zepbound an antidepressant. Much

less does it mean that Zepbound is *not* a weight-loss drug.  Hamburger's argument would demand both inferences.  Neither holds up.

*   *   *

Because Zepbound is a weight-loss drug, the Group Contract excluded it from coverage. Hamburger's benefits claim cannot stand.

**B.**

Turn to Hamburger's other claim, which invokes 29 U.S.C. § 1132(a)(3).  Compl. ¶¶ 82– 92.  That provision authorizes suits "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  Section 1132(a)(3) is a "catchall" or "safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  The *Varity* Court "expect[ed] that where Congress elsewhere provided adequate relief for a beneficiary's injury, there w[ould] likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate' " under § 1132(a)(3).  *Id.* at 515.

"[T]he great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)."  *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (Wilkinson, J.) (collecting cases).  Although the D.C. Circuit has not weighed in, judges in this district have "followed the view of the majority of circuits that a breach of fiduciary [duty] claim under § 1132(a)(3) cannot stand when a plaintiff has an adequate remedy for her injuries under § 1132(a)(1)(B)."  *Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 155 (D.D.C. 2012);

8

*accord Clark v. Feder Semo & Bard, P.C.*, 527 F. Supp. 2d 112, 116–17 (D.D.C. 2007); *Wright*, 618 F. Supp. 2d at 56.

This Court agrees. The "commonplace [canon] of statutory construction that the specific governs the general" shows why. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (cleaned up). That canon cautions against reading general provisions in a manner that would "swallow[]" more specific ones. *Id.*; *see also* Scalia & Garner, *supra* Part III.A, at 174 (stating that no provision "should needlessly be given an interpretation that causes it to duplicate another provision"). It applies particularly when "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *RadLAX Gateway Hotel*, 566 U.S. at 645 (cleaned up). Allowing benefits claims under § 1132(a)(1)(B) and "catchall" claims under § 1132(a)(3) to proceed in tandem would defy this canon and misread ERISA.

Swimming with the stream of authority, the Court thus holds that Hamburger cannot advance his § 1132(a)(3) claim. That claim seeks to recover for the same underlying injury: the denial of coverage for Zepbound. *See* Compl. ¶¶ 78–92. "Because the gravamen of [Hamburger's] complaint is that []he was improperly denied benefits, the remedies under [§ 1132(a)(1)(B)] would make [him] whole if []he were to prevail on h[is] claim." *See Clark*, 527 F. Supp. 2d at 117. Hamburger "does not allege harm to [him]self from [Defendants'] apparently isolated administrative errors or omissions . . . that is separable from the harm flowing from the allegedly improper denial of benefits." *See Zalduondo*, 845 F. Supp. 2d at 155. "[B]ecause awarding [Hamburger] relief under § 1132(a)(1)(B) would fully redress his alleged injury, any claim [he] is making for equitable relief under § 1132(a)(3) is precluded." *See Wright*, 618 F. Supp. 2d at 56. In short, ERISA forbids Hamburger's attempt to double dip.

More, and in any event, Hamburger has not stated a plausible breach of fiduciary duty. None of his theories work.

Hamburger tries to locate a breach in "Defendants' categorical denial of Zepbound and failure to process requests for Zepbound to treat a covered medical condition." Compl. ¶ 89. That claim is misplaced. Recall that the coverage denial adhered to the Group Contract's terms. *Supra* Part III.A. Defendants did not breach their fiduciary duty in doing what Hamburger's health plan demanded. *See Heimeshoff*, 571 U.S. at 108 (highlighting "the particular importance of enforcing plan terms as written"). Given the Group Contract's categorical exclusion, Defendants also had no obligation to respond to Hamburger's claims of "medical necessity." *See* Compl. ¶ 90. They instead were on firm contractual ground in explaining that their denial "d[id] not involve any determination of medical judgment." *See* Initial Adverse Determination Notice at 2.

Nor is there merit to Hamburger's claim that "Caremark failed to consider the Plan's procedure for Non-Formulary Exception Requests when reviewing Mr. Hamburger's internal appeal." *See* Compl. ¶ 63. After all, Zepbound was on the relevant formulary at the time, *see* CareFirst Formulary 3 at 5—a fact that Hamburger concedes both in his Complaint and briefing, *see* Compl. ¶¶ 39–40; Pl.'s Opp'n at 10. Hamburger's last-ditch assertion that "Zepbound was on the formulary in name only" fails to persuade. *See* Pl.'s Opp'n at 10. Common sense compels that Defendants had no duty to consider a non-formulary exception for a drug that was on the formulary.

Lastly, Hamburger complains that Defendants failed to give him "adequate notice" in denying his coverage request. Compl. ¶¶ 87, 91. That claim, too, is unsuccessful.

ERISA requires benefit plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133(1); *see also* 29 C.F.R. § 2560.503-1(g)(1) (requiring the denial notice to provide "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the determination is based"). "Along with [its] sister circuits, [the D.C. Circuit] ha[s] adopted the 'substantial compliance' test to determine whether denial notices comply with section 1133 and the regulation." *White v. Aetna Life Ins. Co.*, 210 F.3d 412, 414 (D.C. Cir. 2000) (cleaned up). Under that standard, "[t]echnical noncompliance will be excused as long as the notice substantially complies with the statute and regulation." *Id.*; *accord, e.g.*, *James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 844 F. Supp. 2d 131, 152 (D.D.C. 2012), *aff'd*, 738 F.3d 282 (D.C. Cir. 2013) (per curiam).

These denial notices pass the test. To recap, Caremark's initial letter explained that Hamburger's "prescription benefit plan does not cover the requested medication." Initial Adverse Determination Notice at 2. In its response to Hamburger's appeal, Caremark reiterated that his "pharmacy benefit plan does not cover Zepbound," pointing him "to the prescription benefit drug section in [his] Explanation of Coverage document." Final Adverse Determination Notice at 2. While terse, these communications articulated the reason for the denial and its basis in Hamburger's health plan. Nothing more was needed. *See White*, 210 F.3d at 414.

In sum, because Hamburger's § 1132(a)(3) claim is duplicative and implausible, it fails twice over.

## C.

That leaves one loose end. Recall that Hamburger's aims surpass his own plight. He also sues on behalf of a putative class comprising "participants or beneficiaries covered under ERISA

welfare benefit plans administered by [CareFirst] with pharmacy benefit management programs administered by [Caremark]" who "required or will require Zepbound for the purpose of treating obstructive sleep apnea." Compl. ¶ 70. This putative class action perishes along with Hamburger's individual suit.

Rule 23(a) sets forth the "[p]rerequisites" for successful class actions. *See* Fed. R. Civ. P. 23(a). Next to the elements of numerosity, commonality, and typicality, *id.* 23(a)(1)–(3), the Rule also demands that "the representative part[y] will fairly and adequately protect the interests of the class," *id.* 23(a)(4). It is on this fourth requirement that Hamburger's putative class action founders. "Since [Hamburger] himself has failed to state a viable claim against [D]efendant[s], he cannot act as the class representative or fairly and adequately protect the interests of the class." *See Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 162 (D.D.C. 2015) (cleaned up); *see also E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403–04 (1977) (holding that plaintiffs whose individual claims failed "were not proper class representatives" under Rule 23(a)); *Gur-Ravantab v. Georgetown Univ.*, 345 F.R.D. 1, 7 (D.D.C. 2023) (denying class certification where named plaintiff was not a member of proposed class). As goes Hamburger's individual suit, so does the class action.

## IV.

Neither of Hamburger's ERISA claims survives. Nor does his putative class action. The Court will thus grant Defendants' motions to dismiss. A separate Order will issue. Hamburger can pay for Zepbound himself or lobby his employer to renegotiate the terms of the Group Contract, but he cannot use ERISA to force CareFirst to pay for a drug it specifically excluded in its agreement with his employer.

Dated: June 10, 2026        TREVOR N. McFADDEN, U.S.D.J.

12